UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JKA, INC. d/b/a DIVERSIFIED DISTRIBUTION,<br><br>Plaintiff,<br><br>v.<br><br>ANISA INTERNATIONAL INC.,<br><br>Defendant. | ) | Civil Action No. 07-123-S |

**OBJECTION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA**

Plaintiff JKA, Inc. hereby objects to the defendant's Motion To Dismiss For Lack Of Personal Jurisdiction Or, In The Alternative, To Transfer To The Northern District Of Georgia.

In support of this Objection, the Court is respectfully referred to the accompanying memorandum and associated affidavits and exhibits, which have been filed under seal at defendant's request.

JKA, INC., d/b/a DIVERSIFIED DISTRIBUTION,

By its Attorneys,

/s/ Mark A. Pogue
Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
401.274.9200
401.276.6611 Telecopy

Of Counsel:

Robert J. Doherty
10-11 George Street
Barrington, RI 02806

**Certificate of Service**

I hereby certify that on the 4th day of January, 2008 a copy of the foregoing Objection was served via ECF to:

Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza
Providence, RI 02903

/s/ Mark A. Pogue

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JKA, INC. d/b/a DIVERSIFIED DISTRIBUTION,<br><br>Plaintiff,<br><br>v.<br><br>ANISA INTERNATIONAL INC.,<br><br>Defendant. | **REDACTED VERSION**<br><br>Civil Action No. 07-123-S |

**MEMORANDUM IN SUPPORT
OF PLAINTIFF JKA, INC.'S OBJECTION
TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION OR, IN THE ALTERNATIVE,
TO TRANSFER TO THE NORTHERN DISTRICT OF GEORGIA**

Plaintiff JKA, Inc. d/b/a Diversified Distribution ("Diversified") submits this memorandum in support of its objection to the "Motion To Dismiss For Lack Of Personal Jurisdiction Or, In The Alternative, To Transfer To The Northern District Of Georgia" (the "Motion") filed by defendant Anisa International, Inc. ("Anisa"). As shown below, this Court has both specific and general personal jurisdiction over Anisa. As a consequence, the Motion should be denied.

## Factual Background

### A. The Litigation

This is a patent infringement action. Diversified is the assignee of U.S. Design Patent No. D-475,918 (the '918 Patent"), entitled "Cosmetic Carrying Case," which issued on June 17, 2003. A copy of the '918 Patent is attached hereto as Exhibit A.

The product covered by the '918 Patent is a plastic carrying case with a slide fastener running along the rear side of the case. The case is used to hold brushes or other cosmetic products. Exhibit B hereto is a photograph of a carrying case made by Diversified which embodies the invention of the '918 Patent.

In its Complaint, Diversified alleges that Anisa has been and is making, using, offering for sale, and selling cosmetic carrying cases which embody the invention of the '918 Patent, without authorization from Diversified. Complaint ¶ 7. Diversified alleges that these activities constitute patent infringement under 35 U.S.C. § 271.

### B. The Parties

#### 1. Plaintiff Diversified

Diversified is a Rhode Island corporation based in Woonsocket, Rhode Island. Diversified makes bath and beauty products, including the cosmetic carrying case embodying the '918 Patent. Diversified sells these products at wholesale to companies which operate retail stores.

#### 2. Defendant Anisa

Anisa is a Georgia corporation.[1] Like Diversified, Anisa makes bath and beauty products, and sells them at wholesale to companies which operate retail stores. Id. Among the products which Anisa makes and sells is a plastic cosmetic carrying case with a slide fastener running along the rear side of the case. These cases are used to hold brushes or other cosmetic products. Exhibit C is a photograph of a case made by Anisa.

[1] Defendant Anisa International, Inc.'s Memorandum Of Law In Support Of Motion To Dismiss For Lack Of Personal Jurisdiction Or, In The Alternative, To Transfer To The Northern District Of Georgia ("Def. Mem."), p. 3.

As noted, Diversified contends that the carrying cases made and sold by Anisa (hereinafter the "Accused Carrying Cases") violate Diversified's rights under the '918 Patent.

**C. <u>Anisa's Contacts With Rhode Island</u>**

Although it is based in Georgia, Anisa has extensive and varied contacts with the State of Rhode Island.

**1. <u>Anisa's Sales of the Accused Product</u>**

**[REDACTED]**[2] **[REDACTED]**

Kmart has a retail store in Rhode Island. Exh. D., p. 68. **[REDACTED]**

On two additional dates – June 27, 2007 and December 17, 2007, respectively -- representatives of Diversified observed 102 and 24 brushes made by Anisa for sale at the Kmart store in Rhode Island. Affidavit of Valerie Barna ("Barna Aff.") (attached), ¶ 3; Affidavit of Deborah Krieg ("Krieg Aff.") (attached), ¶ 3. All of these brushes were being sold in the Accused Carrying Cases. <u>Id</u>.

**2. <u>Del Ponte's Activities In Rhode Island On Behalf Of Anisa</u>**

Del Ponte is Anisa's Vice President of Retail Sales. Exh. D, p. 9. He has held this job since November 2005, and earns **[REDACTED]** per year. <u>Id</u>., pp. 7, 26. "As Vice President, [Del Ponte] is responsible for Anisa International's sales throughout the United States." Def. Mem., p. 5.

Del Ponte lives and works in North Kingstown, Rhode Island. Exh. D., p. 9. He maintains an office at his home in North Kingstown in connection with his job for Anisa. <u>Id</u>., p. 10. **[REDACTED]**

**[REDACTED]**

---

[2] **[REDACTED]**

Del Ponte maintains company documents at his home office in North Kingstown. Exh. D., p. 13. **[REDACTED]**

**[REDACTED]**

In his capacity as Vice President of Retail Sales for Anisa, Del Ponte conducts a wide range of activities on behalf of Anisa in Rhode Island. As noted, Del Ponte is "responsible for Anisa International's sales throughout the United States." See Def. Mem., p. 5. **[REDACTED]**

**[REDACTED]**

Working from his home office in North Kingstown, Del Ponte has generated many different kinds of documents, and worked on numerous projects, on behalf of Anisa. For example, while in Rhode Island Del Ponte has **[REDACTED]**.[3] **[REDACTED]** Id. at 35-36, 88-89.

Del Ponte sends an average of **[REDACTED]** e-mails per month in connection with his work for Anisa. Exh. F, pp. 4-5. Of these, he sends an estimated **[REDACTED]** e-mails per month from Rhode Island.[4] In addition, Del Ponte makes an average of **[REDACTED]** telephone calls per month from Rhode Island on the telephone line paid for by Anisa. Affidavit of Erin Dolan, ¶ 3. Of these, an estimated **[REDACTED]** telephone calls per month are related to Del Ponte's work for Anisa.[5] Further, Del Ponte sends about **[REDACTED]** faxes per month from Rhode Island in connection with his work for Anisa. Exh. F, pp. 3-4.

### 3. Additional Contacts Between Anisa And Rhode Island

There are many additional contacts between Anisa and the State of Rhode Island.

[3] **[REDACTED]**
[4] **[REDACTED]**
[5] **[REDACTED]**

Anisa has had numerous business dealings with Rhode Island companies. In 2006, Anisa sold $53,809.62 worth of goods (not involving the Accused Carrying Cases) to the Brooks Pharmacy chain in Rhode Island. Def. Mem., p. 4.

Also in 2006, **[REDACTED]**, pp. 37-38. **[REDACTED]**

**[REDACTED]**

**[REDACTED]** Exh. D., p. 104. Because Del Ponte lives and works in Rhode Island, Anisa pays employment taxes to the State of Rhode Island. **[REDACTED]** Exh. G.

Anisa has sent at least **[REDACTED]** emails to Del Ponte since he began working there.[6] Of these, an estimated **[REDACTED]** were sent to Del Ponte in Rhode Island.[7] The emails that Anisa has sent to Del Ponte have transmitted **[REDACTED]** pages of material to him. Of these, an estimated **[REDACTED]** pages of emails have been sent to Del Ponte in Rhode Island.[8]

In addition, Anisa has placed an estimated **[REDACTED]** telephone calls to Del Ponte in Rhode Island.[9]

**D. The Motion**

---

[6] Anisa's supplemental interrogatory answers indicate that it sent Del Ponte **[REDACTED]** emails between May 2006 and July 2007. Exh. F, p. 7. But this is only a partial total, because emails sent before May 2006 have been deleted. Exh. D, p. 113.

[7] Del Ponte testified that he receives emails when traveling with the same frequency as when he is in Rhode Island. Exh. D. p. 20. **[REDACTED]**

[8] This page estimate is based on a review of four DVD's provided by Anisa in discovery which contain the emails it has sent to Del Ponte. The DVD's contain a total of **[REDACTED]** pages of emails. Affidavit of Diane Dawson, ¶ 4; Affidavit of Natasha Richard ¶ 4. Since Del Ponte is in Rhode Island on Anisa business about **[REDACTED]** of the time, see note 4, supra, this means that Anisa has sent an estimated **[REDACTED]** pages of emails **[REDACTED]** to Del Ponte in Rhode Island.

[9] This estimate is derived as follows. Del Ponte testified that, at the time of his deposition, he had worked for Anisa for approximately **[REDACTED]** days, and that he was in Rhode Island an estimated **[REDACTED]** of those days. See note 4, supra. He testified that Anisa telephones him **[REDACTED]** on the Rhode Island telephone line the company maintains for him. Id., p. 102. Multiplying the number of days Del Ponte has worked in Rhode Island for Anisa **[REDACTED]** calls per day equals **[REDACTED]**, the estimated number of calls Anisa has placed to Del Ponte in Rhode Island.

In its Motion, Anisa argues that this Court lacks personal jurisdiction over Anisa. But the Motion fails to discuss several points which are critical to the jurisdictional analysis in patent infringement cases. The Motion fails to discuss the Federal Circuit Court of Appeals case law which applies to jurisdictional disputes in patent infringement cases; it fails to discuss the "stream of commerce" rule of personal jurisdiction followed by the Federal Circuit; and it fails to address many of the significant contacts between Anisa and the State of Rhode Island.

In the alternative, Anisa requests that this action be transferred to the Northern District of Georgia. But it has presented no facts in support of that request.

## ARGUMENT

For the reasons given below, this Court has both specific and general personal jurisdiction over Anisa. As a result, Anisa's Motion should be dismissed.

### I. The Process For Determining Whether Personal Jurisdiction Exists In A Patent Infringement Case

The principles used for determining whether personal jurisdiction exists over an out-of-state defendant in a patent infringement case differ somewhat from the principles used in other cases. The standards used in patent infringement litigation were set out by the Federal Circuit in Schwanger v. Munchkin, Inc., 1999 WL 820449 (Fed. Cir. 1999):

> Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process. In performing the first inquiry, this court defers to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process. However, in the second inquiry, the federal constitutional due process analysis, this Court analyzes the defendant's contacts with the forum state to determine if

> the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. In doing so for patent cases, this Court does not defer to the interpretations of other regional federal and state courts.

Schwanger, supra at *2 (citations and quotation marks omitted; emphasis added).

This two-part approach to the jurisdictional analysis in patent cases -- and the fact that regional federal law is not relevant to the analysis in patent infringement cases -- has been expressed by the Federal Circuit and other federal courts on numerous occasions. See, e.g., Beverly Hills Fan Company v. Royal Sovereign Corp., 21 F.3d 1558, 1565 n.13, 1566-69 (Fed. Cir. 1994) (following two-part inquiry described in Schwanger; "we owe no special deference to regional circuit law…Since an important role of the Federal Circuit is to eliminate forum shopping, on either substantive or procedural grounds, consistency in this area [of personal jurisdiction] would advance that role."); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998)(same); Fallon Luminous Products Corp. v. Multi Media Electronics, Inc., 343 F. Supp. 502, 504 (D.S.C. 2004) (following two-part analysis set out in Beverly Hills Fan; "Because this is a patent infringement case, Federal Circuit law, rather than Fourth Circuit law, controls the analysis of jurisdiction.") (citations omitted).

### A. The Rhode Island Long-Arm Statute

The first part of the Federal Circuit's two-part jurisdictional inquiry requires consideration of the forum state's long-arm statute. Anisa correctly notes that Rhode Island's long-arm statute, R. I. Gen. Laws § 9-5-33, extends to the full extent permitted by the federal constitution. Def. Mem., p. 8. "Because the Rhode Island Supreme Court has held that the state's long-arm statute is co-extensive with federal constitutional limits,

only those limits constrain this Court's jurisdiction." CVS Corp. v. Taubman Centers, Inc., 225 F. Supp. 2d 120, 123 (D.R.I. 2002).

### B. Federal Due Process

The second part of the inquiry requires a review of federal due process considerations. The United States Supreme Court has recognized that, for federal due process purposes, personal jurisdiction comes in two forms: general and specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 966 U.S. 408, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). The showing needed to establish each of these types of jurisdiction, consistent with federal due process, is discussed below. As noted, only Federal Circuit law—not regional circuit law—is relevant to this discussion.[10]

#### 1. Specific Jurisdiction

To establish specific jurisdiction, the court must be able to find that "if [the defendant] be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L.Ed.2d 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L.Ed. 278 (1940). Later cases have clarified that the minimum contacts must be "purposeful contacts." Beverly Hills Fan, supra at 1565, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L.Ed.2d 578 (1985). "The requirement for purposeful minimum contacts helps ensure

[10] Anisa fails to recognize this important point. In the discussion of federal due process contained in its brief, Anisa relies heavily on First Circuit and Rhode Island District Court case law in support of its jurisdictional argument. Def. Mem., pp. 7-10, 13. For the reasons given above, however, these cases are not relevant. In a patent infringement case, only Federal Circuit (and Supreme Court) case law is relevant to the due process analysis.

that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Id.

**a. Minimum Contacts**

In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court announced that, in certain circumstances, the delivery of goods into the "stream of commerce" can satisfy the "purposeful minimum contacts" test for specific personal jurisdiction:

> [I]f the sale of a product of a manufacturer or distributor…is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product…, it is not unreasonable to subject it to suit…The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce, with the expectation that they will be purchased by consumers in the forum State.

Id. at 297-98, 100 S. Ct. at 567.

The Federal Circuit has held that personal jurisdiction exists over a foreign defendant under the "stream of commerce" doctrine if two facts are present: the defendant placed its products into the stream of commerce through "an established distribution channel," and the defendant knew, or reasonably could have foreseen, that a termination point of the channel was the forum state. For example, in Beverly Hills Fan, the manufacturer and importer of a fan (Ultrec and Royal, respectively) which allegedly infringed the plaintiff's patent sold the accused fans to a national chain of hardware stores known as Builder's Square. At the time of suit, the plaintiff showed that 52 of the accused fans were for sale in Builder's Square stores in the forum state (Virginia). Based on these facts, the Federal Circuit found personal jurisdiction:

> It is undisputed that at least fifty-two Ultrec fans were present in Virginia…[I]t can be presumed that the distribution channel formed by defendants and Builder's Square was intentionally established, and that the defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia.
> 21 F.3d at 1564.

In Schwanger, the Federal Circuit held that the same two factors—an established distribution channel, and knowledge that it terminated in the forum state—was sufficient to confer jurisdiction over a foreign defendant under the stream of commerce theory. In the process, the court found that selling to a national retailer amounted to the use of a well-established distribution channel:

> [T]he allegations here are that [defendant] purposefully shipped the accused product into Ohio, through Wal-Mart, an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is required to establish the purposeful minimum contacts necessary for personal jurisdiction.

217 F.3d *6 (citing Beverly Hills Fan, supra, 21 F.2d at 1565).

Following Beverly Hills Fan and Schwanger, numerous federal district courts have found personal jurisdiction over patent infringement defendants who ship their products through an established distribution channel (or to a national retail chain) with knowledge that the channel terminates in the forum state. For example, in Fallon Luminous Products Corp., the court found jurisdiction because the defendant (MME) sold its product to a national retailer (Wal-Mart), and the products ended up in the forum state:

> MME intentionally sells the allegedly infringing neon signs to Wal-Mart, knowing that it has stores throughout the nation. By selling the neon signs to Wal-Mart, a likely destination of the neon signs is one of the eighteen Wal-Mart discount stores or forty-two Wal-Mart supercenters in

> South Carolina. Further, [plaintiff] confirmed the presence of MME's allegedly infringing neon signs in South Carolina by purchasing one of them at a Spartanburg, South Carolina Wal-Mart. Based on the foregoing, the court finds that MME purposefully directed the allegedly infringing neon signs at South Carolina by placing them in the stream of commerce through an established distribution chain.

343 F. Supp. 2d at 507.[11] Accord, Elonex Plase II Power Management Litigation, 2003 WL 21026758 *2 (D. Del. 2003) (defendant Jean sold its computer monitors to distributors, who resold them to national retailer chains such as Circuit City and CompUSA; "given [the distributors'] extensive re-reseller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.") Braley v. Sportec Products Co., 2002 WL 1676293 *4 (D.N.H. 2002)(finding personal jurisdiction where defendant "put its products into the stream of commerce with the expectation that it would be purchased by NASCAR fans, many of whom could be found in New Hampshire.").

**b. Reasonableness**

A finding of minimum contacts and purposeful availment is not by itself enough to establish specific personal jurisdiction consistent with federal due process. "Even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." Beverly Hills Fan, 21 F.3d at 1568. Evaluating the

[11] Like the Schwanger court, the Fallon court found that sales to a national retailer amounted to the use of an established distribution channel: "MME sold the allegedly infringing neon signs to a national retailer, Wal-Mart, which has a known nationwide distribution chain. Therefore, MME intentionally established a nationwide distribution network." Id.

reasonableness of asserting jurisdiction over an out-of-state defendant requires a consideration of several factors, including the burden on the defendant, the interest of the forum state, and the plaintiff's interests. Id.

The Federal Circuit, however, has made it clear that cases where reasonableness concerns override otherwise sufficient minimum contacts will be very unusual:

> [T]hese cases are limited to the rare situation in which the plaintiff's interest and the state's interest are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. See Burger King, 471 U.S. at 477, 105 S. Ct., at 2185 (must be "compelling case" of unreasonableness); Keeton, 465 U.S. at 774-75, 104 S. Ct. at 1478-79 (purposeful minimum contacts 'ordinarily' enough).

Beverly Hills Fan, 21 F.3d at 1568.

**2. General Jurisdiction**

The second type of personal jurisdiction is general jurisdiction. "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000), citing Helicopteros Nacionales, supra, 466 U.S. at 414-16. "Neither the United States Supreme Court nor [the Federal Circuit Court of Appeals] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." Burger King, supra, at 472-73.

Although no specific test has been articulated, the Supreme Court has issued two decisions which illustrate how the "continuous and systematic" inquiry applies in particular cases. In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Court found that the defendant's in-forum contacts were continuous and systematic enough to justify the exercise of general personal jurisdiction.[12] On the other hand, in Helicopteros Nacionales, the Court found that the defendant's in-forum contacts were did not justify the assertion of general jurisdiction.[13]

---

[12] In Perkins, the general manager and president of the defendant (a Phillipine corporation) maintained an office in Ohio, maintained company documents in Ohio, held directors' meetings in Ohio, and "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company." 342 U.S. at 448, 72 S.Ct. at 419.

[13] The Helicopteros Nacionales court found that the defendant Columbian corporation's general business contacts with Texas were not "continuous and systematic" where the defendant made purchases from Texas, sent personnel to Texas for training, and sent an officer of the corporation on a single trip to Texas for contract negotiations, but had never performed operations or solicited business within the state. The Court held that "mere purchases" and the related brief presence of employees in the forum state did not amount to the "continuous and systematic general business contacts" contemplated by the Perkins court.

The Federal Circuit has stated that where an agent or employee of an out-of-state company lives and works in the forum state, "that weighs in favor of the exercise of general jurisdiction over the company." Delta Sys., Inc., v. Indak Mfg. Corp., 4 Fed.Appx. 857, 861 (Fed. Cir. 2001) (unpub. op.)[14] The Delta court noted with approval two regional Circuit Court decisions which held that the presence of a defendant's agent in the forum state is relevant to the question whether general jurisdiction exists. 4 Fed. Appx. at 861 (citing Trieweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996) ("whether the corporation solicits business in the state through a local office or agents" is pertinent factor in jurisdictional analysis) and Michigan Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466-67 (6th Cir. 1989) (reversing dismissal for lack of general jurisdiction where, inter alia, foreign company retained independent sales representative in forum state)).

As in the case of specific personal jurisdiction, if the court determines that there are sufficient minimum contacts with the forum to support general jurisdiction over the defendant, the court still must determine whether the assertion of such jurisdiction is reasonable under the circumstances of the case. Hockerson-Halberstadt, Inc., v. Propet

---

466 U.S. at 416-18, 104 S.Ct. at 1873-74.

[14] It appears that the Delta decision was originally released pursuant to Local Rule 47.6 of the Federal Court Rules. That Rule prohibited parties from citing the "order" within a decision "as precedent." However, Local Rule 47.6 was repealed in 2006 pursuant to new F.R.A.P. 32.1. Moreover, numerous district courts have cited to the Delta decision. See, e.g., Massachusetts Institute of Technology v. Micron Technology, Inc., 508 F.Supp.2d 112, 121 (D. Mass. Aug. 23, 2007) (finding general jurisdiction over foreign defendant); 3M Innovative Properties Co. v. InFocus Corp., 2005 WL 361494, *2 (D.Minn. 2005); Eli Lilly and Co. v. Mayne Pharma (USA) Inc., 504 F.Supp.2d 387, 394 (S.D. Ind. Aug. 28, 2007); Logan Farms v. HGH, Inc., DE, 282 F.Supp.2d 776, 793 (S.D.Ohio 2003). Diversified therefore believes that it may cite to and rely on the Delta decision as long as it indicates that the decision is unpublished.

USA, Inc., 62 Fed.Appx. 322, 337 (Fed.Cir.2003) (unpub. op.) (holding that reasonableness analysis applies in general jurisdiction case under Federal Circuit law).[15]

## II. Application Of The Foregoing Standards Makes Clear That This Court Has Specific Jurisdiction Over Anisa

Beverly Hills Fan and its progeny make clear that this Court has specific personal jurisdiction over Anisa under the "stream of commerce" doctrine. **[REDACTED]** p. 72. **[REDACTED]** Id., p. 75. Diversified's own witnesses saw dozens of the Accused Carrying Cases for sale at the same store on two other occasions. Barna Aff., ¶ 3; King Aff., ¶ 3.

These facts make it plain that the two points needed to establish specific personal jurisdiction under the Federal Circuit's stream of commerce doctrine—the defendant's use of an established distribution channel (or national retailer), and its knowledge that the forum state is a likely termination point of that channel—are present here. There is no meaningful difference between the facts of this case and those at issue in Beverly Hills Fan (defendants sold to Builder's Square knowing that Builder's Square would resell product in forum state); Schwanger (sales to Wal-Mart knowing Wal-Mart would resell in forum); Fallon (same) and Elonex (sales to distributor, which resold to Circuit City and CompUSA). Because Diversified's claim of patent infringement relates to Anisa's sale **[REDACTED]**, "No more is required to establish the purposeful minimum contacts necessary for personal jurisdiction." Schwanger, 1999 WL 820449 *6 (Fed. Cir. 1999).[16]

---

[15] Anisa notes that Diversified did not plead facts in its Complaint that would demonstrate that this Court has personal jurisdiction over Anisa. Def. Mem. at 10. Doing so is not necessary. "[T]he complaint need not allege . . . the basis for jurisdiction over the defendant's person or property." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1207, p. 121.

[16] There is no question that the carrying cases Del Ponte identified at his deposition as having been sold to **[REDACTED]** are the same products alleged to infringe the '918 Patent. Affidavit of Janice Ajootian, ¶ 3.

This is not one of those "rare" cases in which it would be unreasonable to assert jurisdiction over Anisa despite its purposeful minimum contacts with Rhode Island. To begin with, Rhode Island has a significant interest this dispute. To paraphrase the Beverly Hills Fan court:

> [Rhode Island's] interests in the dispute are significant. [Rhode Island] has an interest in discouraging injuries that occur within the state. That interest extends to design patent infringement actions such as the one here.

Beverly Hills Fan, supra at 1568 (citation omitted).

Rhode Island has another interest in serving as the forum for this action as well. To paraphrase Beverly Hills Fan again:

> [Rhode Island] also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating plaintiff's cause of action. [Diversified] will be able to seek redress in [Rhode Island] for sales of the [Accused Carrying Cases] to consumers in these other states. These other states will thus be spared the burden of providing a forum for [Diversified] to seek redress for these sales. And [Anisa] will be protected from harassment resulting from multiple suits.

Beverly Hills Fan, supra at 1568 (citation and footnote omitted).

Finally, the burden on Anisa of litigating this action in Rhode Island would not be so onerous as to deny it due process. A comparison with other cases makes this clear. See Fallon, supra at 508 (requiring New York company to defend patent infringement action in South Carolina did not impose excessive burden); Elonex, supra at *3 (requiring Taiwanese company to defend in Delaware did not impose excessive burden); Beverly Hills Fan, 21 F.3d at 1569 (requiring Chinese and New York companies to defend in Virginia did not impose excessive burden).

For the foregoing reasons, this Court has specific personal jurisdiction over Anisa.

### III. Application Of The Foregoing Standards Makes Clear That This Court Has General Personal Jurisdiction Over Anisa

This Court also has general personal jurisdiction over Anisa. That is because Anisa has "continuous and systematic" contacts with Rhode Island. Two points make this clear.

First, the fact that Del Ponte lives and works for Anisa in Rhode Island establishes a continuous and systematic contact with this State, and "weighs in favor of the exercise of general jurisdiction." Delta, supra at 861. The nature and extent of Del Ponte's activities make his presence here especially significant. Del Ponte is not a mere dealer or sales representative trying to sell his company's wares. Rather, he is a corporate officer of Anisa. He is "responsible for Anisa's sales throughout the United States." Def. Mem. at 5. In the course of supervising Anisa's sales throughout the United States, Del Ponte **[REDACTED]** – a testament to his importance to the company. Under Federal Circuit case law, these substantial activities all weigh strongly in favor of a finding of general jurisdiction.[17]

A second reason why general jurisdiction is present here is because the facts of this case are much closer to those in Perkins – where the Supreme Court found that general jurisdiction existed – than to those in Helicopteros Nacionales, where it found that such jurisdiction did not exist. In contrast to Helicpoteros Nacionales, where the defendant's agents made just a few visits into the forum, Del Ponte lives and works continuously in Rhode Island. In contrast to Helicpoteros Nacionales, where the defendant never performed any business or conducted any operations in the forum, Del

[17] As Anisa notes, several district courts have found that the presence of one or more sales agents in the forum state is insufficient to confer personal jurisdiction. See Def. Mem. at 14-16 (citing cases). These cases are not controlling, however, because i) they were not decided under Federal Circuit law, and ii) they involved sales agents with far less substantial responsibilities than Del Ponte has.

Ponte has spent thousands of hours performing a variety of substantive tasks for Anisa in Rhode Island. As in Perkins, where the defendant maintained an office, maintained company documents, and conducted meetings in the forum state, Anisa's Del Ponte maintains an office, maintains company documents, and has **[REDACTED].**

In fact, the volume of contacts between Anisa and Rhode Island dwarfs the forum contacts identified in Perkins. Anisa pays taxes to Rhode Island; **[REDACTED]** sold goods to a Rhode Island company; has made an estimated **[REDACTED]** phone calls into Rhode Island; has sent at least **[REDACTED]** emails, comprising an estimated **[REDACTED]** pages of material, into Rhode Island; has conducted **[REDACTED]** in Rhode Island; and has a corporate officer living and working here. These contacts are more than enough to support a finding of general jurisdiction.

## IV. Anisa's Motion In The Alternative To Transfer This Case To The Northern District Of George Should Be Denied

If the Court concludes that it has personal jurisdiction over Anisa, Anisa requests that this action be transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1404. The factors traditionally weighed in considering a transfer request under § 1404 include: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of witnesses and location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the state or public interest at stake." Cruz v. Hartford Cas. Ins. Co., 2005 WL 1231965 *2 (D.R.I. 2005).

Apart from the bare fact that it is based in Georgia, Anisa has not presented any facts which demonstrate that the Cruz factors militate in favor of transferring this case. Anisa's failure to adduce any supporting facts requires that its transfer request be denied.

**Conclusion**

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

JKA, INC., d/b/a DIVERSIFIED DISTRIBUTION,

By its Attorneys,

/s/ Mark A. Pogue

Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
401.274.9200
401.276.6611 Telecopy

Of Counsel:

Robert J. Doherty
10-11 George Street
Barrington, RI 02806

**Certificate of Service**

I hereby certify that on the 4th day of January, 2008 a copy of the foregoing Memorandum was served via ECF to:

Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan PC
One Citizens Plaza
Providence, RI 02903

/s/ Mark A. Pogue