UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JKA, INC. d/b/a                    :
DIVERSIFIED DISTRIBUTION,          :
                Plaintiff,         :
                                   :
         v.                        :          CA 07-123 S
                                   :
ANISA INTERNATIONAL INC.,          :
                Defendant.         :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

     Before the Court is the motion of Defendant Anisa
International, Inc. ("Anisa"), to dismiss for lack of personal
jurisdiction or, in the alternative, to transfer this action to
the Northern District of Georgia.  See Defendant Anisa
International, Inc.'s ... Motion to Dismiss for Lack of Personal
Jurisdiction or, in the Alternative, to Transfer to the Northern
District of Georgia (Document ("Doc.") #5) ("Motion to Dismiss or
Transfer" or "Motion").[1]  The Motion has been referred to me for
preliminary review, findings, and recommended disposition
pursuant to 28 U.S.C. § 636(b)(1)(B).  A hearing was conducted on
February 14, 2008.  For the reasons stated herein, I recommend
that the Motion be denied.

                          **Introduction**

     This is an action for patent infringement.  See Complaint
and Jury Demand (Doc. #1) ("Complaint") ¶ 3.  Plaintiff JKA, Inc.
d/b/a Diversified Distribution ("Plaintiff" or "JKA"), a Rhode

---

[1] The actual title of the motion is "Defendant Anisa Interntional
[sic], Inc.'s Memorandum of Law in Support of Motion to Dismiss for
Lack of Personal Jurisdiction or, in the Alternative, to Transfer to
the Northern District of Georgia."  In identifying the motion above,
the Court has corrected the spelling of International and omitted the
words: "Memorandum of Law in Support of ...."

Island corporation, alleges that Anisa, a Georgia corporation, is infringing a patent to which JKA holds the rights, U.S. Design Patent No. D-475,918 ("the '918 Patent"), <u>see</u> <u>id.</u> ¶¶ 5-8, and entitled "Cosmetic Carrying Case,"[2] Memorandum in Support of Plaintiff JKA, Inc.'s Objection to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the Northern District of Georgia ("Plaintiff's Mem.") at 1.  Specifically, JKA complains that Anisa is infringing the '918 Patent by making, using, offering for sale and/or selling cosmetic carrying cases embodying the invention of the '918 Patent without authorization from Plaintiff in violation of 35 U.S.C. § 271.

### Facts

Plaintiff, a Rhode Island corporation based in Woonsocket, makes bath and beauty products, including the cosmetic carrying case embodying the '918 Patent.  <u>See</u> Plaintiff's Mem. at 2. Plaintiff sells these products at wholesale to companies which operate retail stores.  <u>See</u> <u>id.</u>

Anisa is a Georgia corporation engaged in the business of marketing and selling cosmetic and bath products at the wholesale level.  <u>See</u> Declaration of Anisa Telwar (Doc. #6) ("Telwar Decl.") ¶ 3.  These products include cosmetic brushes and accessories, such as compacts, and bath products, such as brushes, slippers, and puffs.  <u>See</u> <u>id.</u>  Anisa manufactures its cosmetic brushes and many of the packages for those brushes at

---

[2] "The product covered by the '918 Patent is a plastic carrying case with a slide fastener running along the rear side of the case. The case is used to hold brushes or other cosmetic products." Memorandum in Support of Plaintiff JKA, Inc.'s Objection to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the Northern District of Georgia ("Plaintiff's Mem.") at 2.

its own factory located in China.[3]  Id. ¶ 4.  Its other products are obtained from other factories in China that are not directly affiliated with Anisa.  See id. ¶ 4.  Anisa sells its products in a variety of markets, including the United States, through a variety of retail outlets, including Kmart.  See id.

Anisa's vice-president of retail sales, David Del Ponte ("Mr. Del Ponte"), is located in Rhode Island and works from his home in North Kingstown.  See id. ¶¶ 12-13.  According to Anisa, the decision to have Mr. Del Ponte work from his home "was purely one of convenience for Mr. Del Ponte."  Id. ¶ 13.  He spends a majority of his time making contact with Anisa's home office in Atlanta or with customers in other states via the telephone or internet.  See id. ¶ 14.  "The vast majority of his direct contact with customers takes place outside Rhode Island, generally in face-to-face meetings in Chicago, New York, and Bentonville, Arkansas.  All sales arranged by Mr. Del Ponte are channeled through Anisa['s] ... home office in Atlanta."  Id.

From mid-2006 until the fall of 2007, Anis sold "[t]ens of thousands" of cosmetic brushes to Kmart.  Deposition of David Del Ponte ("Del Ponte Dep.") at 65, 72.  Twenty-four different styles of cosmetic brushes were involved in the sales.  See id. at 65.  All of these brushes were sold to Kmart in the carrying cases which Plaintiff alleges violate its rights under the '918 Patent.  See id. at 94.  The total value of the sales Anisa made to Kmart during this period was "probably over $800,000."  Id. at 114.

Anisa made between 50 and 75 different shipments of brushes and the accused carrying cases to Kmart in 2006 and 2007.  See id. at 72.  Every shipment followed the same well-established distribution channel: from China, where the products were made,

---

[3] According to Plaintiff, among the packages which Anisa makes "is a plastic cosmetic carrying case with a slide fastener running along the rear side of the case."  Plaintiff's Mem. at 2.

to a distribution center in this country used by Anisa, to one of eight distribution centers owned by Kmart, and from there to the individual Kmart retail stores.  <u>See</u> <u>id.</u> at 70.

Kmart has a retail store in Rhode Island.  <u>See</u> <u>id.</u> at 68. At the time Anisa was selling its brushes and accused carrying cases to Kmart, Anisa knew that a termination point of the distribution channel for these products was the Kmart store in Rhode Island.  <u>See</u> <u>id.</u>  In fact, Mr. Del Ponte visited that store on three or four occasions and observed Anisa's brushes and accused carrying cases on display there.  <u>See</u> <u>id.</u> at 75.  On each occasion, Mr. Del Ponte saw at least thirty individual Anisa brushes, inside the accused carrying cases, displayed for sale. <u>See</u> <u>id.</u>

On two additional dates, June 27, 2007, and December 17, 2007, other employees of Plaintiff visited the Kmart store and observed brushes manufactured for Kmart by Anisa on sale in the store.  <u>See</u> Affidavit of Valerie Barna ("Barna Aff.") ¶¶ 2-3; Affidavit of Deborah Krieg ("Krieg Aff.") ¶¶ 2-3.  On June 27, 2007, 102 individual brushes or brush sets, packaged in the accused carrying cases, were observed being offered for sale in the store.  <u>See</u> Barna Aff. ¶¶ 2-3.  On December 17, 2007, twenty-four individual brushes or brush sets, again packaged in the accused carrying cases, were observed.  <u>See</u> Krieg Aff. ¶¶ 2-3.

**Law**

Federal Circuit law governs the issue of personal jurisdiction in a patent-related case.  <u>Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.</u>, 297 F.3d 1343, 1348 (Fed. Cir. 2002); <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995)(stating that in determining whether a district court may exercise personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit applies and not that of the regional circuit in which the action arose); <u>Beverly Hills</u>

Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1561 n.4 (Fed.
Cir. 1994)(explaining that the law of the regional circuit
applies "to procedural matters that are not unique to patent
law"); see also 3D Sys., Inc. v. Aarotech Labs., 160 F.3d 1373,
1377 (Fed. Cir. 1998)(stating that "[t]he district court erred by
applying Ninth Circuit law in its federal due process analysis");
Central Tools, Inc. v. Mitutoyo Corp., 381 F.Supp.2d 71, 73
(D.R.I. 2005)("Claims concerning personal jurisdiction over a
party in a declaratory judgment action involving patent
invalidity are governed by Federal Circuit law.").  Thus, this
Court applies the law of the Federal Circuit and not that of the
First Circuit (except as to any procedural matters that are not
unique to patent law).  See Beverly Hills Fan, 21 F.3d at 1561
n.4.

    "In order to establish personal jurisdiction in a patent
infringement case over a non-resident defendant whose products
are sold in the forum state, a plaintiff must show both that the
state long arm statute applies and that the requirements of due
process are satisfied."  Commissariat A L'Energie Atomique v. Chi
Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005);
accord Beverly Hills Fan, 21 F.3d at 1560 ("The [district] court
correctly realized that there were two limits to its
jurisdictional reach: Virginia's long-arm statute and the Due
Process Clause of the U.S. Constitution."); see also Viam Corp.
v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir.
1996).  Where the state long-arm statute authorizes the exercise
of jurisdiction to the full extent permitted by the United States
Constitution, this inquiry collapses into a single question.  See
Deprenyl, 297 F.3d at 1350; see also Viam, 84 F.3d at 427
(explaining that because the California long arm statute extends
the reach of personal jurisdiction to the full limits of the
Federal Constitution, the question "is whether sufficient

contacts exist between [defendant] and the State of California to satisfy the requirements of International Shoe [Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945)]").  Because the Rhode Island long arm statute authorizes assertion of personal jurisdiction to the fullest extent permitted by the United States Constitution, Women & Infants Hosp. of Rhode Island v. Cmty. Health Network of Connecticut, Inc., 394 F.Supp.2d 488, 491 (D.R.I. 2005)(citing Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990)), the question here is whether asserting personal jurisdiction over Anisa is consistent with the Due Process Clause, Brian Jackson & Co. v. Eximas Pharm. Corp., 248 F.Supp.2d 31, 35 (D.R.I. 2003).  The ultimate inquiry turns on whether there are sufficient contacts between Anisa and the State of Rhode Island.  Central Tools, Inc. v. Mitutoyo Corp., 381 F.Supp.2d 71, 74 (D.R.I. 2005)(citing Viam, 84 F.3d at 427).

In International Shoe and subsequent cases, the Supreme Court established a two-pronged test for whether the exercise of jurisdiction comports with due process.  Deprenyl, 297 F.3d at 1350.  "First, the defendant must have 'minimum contacts' with the forum.  Where a defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction."  Id. (quoting International Shoe, 326 U.S. at 316, 66 S.Ct. at 158, and citing LSI Indus., Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000)).

For specific jurisdiction, the "minimum contacts" prong requires the plaintiff to show that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  Deprenyl, 297 F.3d at 1350 (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76, 105 S.Ct. 2174, 2181-84 (1985))).  Thus, for this prong the

burden of proof is on the Plaintiff to "establish minimum contacts."  Inamed, 249 F.3d at 1360 (internal quotation marks omitted).  "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'"  LSI Indus., 232 F.3d at 1375 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2182 (1985)); see also Trintec Indus. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005).

The second prong of the due process test provides the defendant an opportunity to defeat jurisdiction by presenting a compelling case that other considerations render the exercise of jurisdiction so unreasonable as to violate "fair play and substantial justice."  Deprenyl, 297 F.3d at 1351 (citing Inamed, 249 F.3d at 1360 (quoting Burger King, 471 U.S. at 476-77, 105 S.Ct. at 2184-85)).  In the second prong, the burden of proof is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable.  Inamed, 249 F.3d at 1360.

The Federal Circuit has summarized the pertinent Supreme Court jurisprudence by articulating a three-factor test. Deprenyl, 297 F.3d at 1351 (citing Akro, 45 F.3d at 1545).  The three factors for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process are: 1) whether the defendant "purposefully directed" its activities at residents of the forum; 2) whether the claim "arises out of or relates to" the defendant's activities in the forum; and 3) whether the exercise of jurisdiction is "reasonable and fair."  Id. (citing Inamed, 249 F.3d at 1360 (quoting Akro, 45 F.3d at 1545)).  The first two factors correspond with the "minimum contacts" prong of the International Shoe analysis, and the third factor corresponds with the "fair play and substantial justice prong of the analysis."  Id.

**Discussion Re Dismissal**

*I.   Purposeful Direction*

The first question which must be considered is whether Anisa "purposefully directed" its activities at residents of the forum. See Deprenyl, 297 F.3d at 1351.  In answering this question, the Court finds the analysis of Asahi Metal Industries Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026 (1987), which appears in Beverly Hills Fan, 21 F.3d 1558 (Fed. Cir. 1994), and Commissariat, 395 F.3d 1315 (Fed. Cir. 2005), instructive.  Asahi presented the Supreme Court with the following question:

> [W]hether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes "minimum contacts" between the defendant and the forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"

Asahi, 480 U.S. at 105, 107 S.Ct. at 1028 (quoting International Shoe, 326 U.S. at 316, 66 S.Ct. at 158 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342 (1940))).  Although all of the Justices agreed in Asahi that on the facts of the case jurisdiction did not lie in California, the Beverly Hills Fan court noted that:

> [A]pparently all of the Justices agreed that the stream of commerce theory provides a valid basis for finding requisite minimum contacts.  The split was over the exact requirements for an application of the theory.
>
> Four Justices were of the view that an exercise of personal jurisdiction requires more than the mere act of placing a product in the stream of commerce. As Justice O'Connor expressed it, there must be in addition "*an action of the defendant purposefully directed toward the forum State*."  Asahi, 480 U.S. at 112, 107 S.Ct. at 1032. (Emphasis  in  original)   But  four  of  the  Justices

8

considered the showing of 'additional conduct' unneeded:

> "The stream of commerce refers not to
> unpredictable currents or eddies, but to the
> regular and anticipated flow of products from
> manufacture to distribution to retail sale
> .... A defendant who has placed goods in the
> stream of commerce benefits economically from
> the retail sale of the final product in the
> forum State, and indirectly benefits from the
> State's laws that regulate and facilitate
> commercial activity."

Beverly Hills Fan, 21 F.3d at 1566 (quoting Asahi, 480 U.S. at 117, 107 S.Ct. at 1034-35 (Brennan, White, Marshall & Blackmun, JJ., concurring in part and concurring in the judgment)); see also Commissariat, 395 F.3d at 1320 (explaining the different positions taken by Justices O'Connor and Brennan regarding question of "minimum contacts").  The view expressed by Justice O'Connor came to be known as "stream of commerce plus."  Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006); Clune v. Alimak AB, 233 F.3d 538, 542 (8th Cir. 2000); Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 205 n.8 (3rd Cir. 1998)(noting standard); Homedics, Inc. v. Yejen Indus., Ltd., No. 05-CV-70102-DT, 2006 WL 2594918, at *4 (E.D. Mich. Sept. 8, 2006); Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., No. Civ. A. 2:05-CV-185, 2005 WL 3299718, at *3 (E.D. Tex. Dec. 5, 2005).

The Beverly Hills Fan court concluded that it was unnecessary to resolve which of the two views of the stream of commerce theory was correct because under either version the plaintiff had made the required jurisdictional showing.  See Beverly Hills Fan, 21 F.3d at 1566.  The court found that the "defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state

9

were such that they should reasonably have anticipated being
brought into court there."  Id.

     This Court finds that the circumstances of the instant case
are similar to those in Beverly Hills Fan and that the facts are
sufficient to meet even the "stream of commerce plus" test.
Anisa has done far more than simply release its product into the
stream of commerce.

     First, Anisa placed its product into an established
distribution channel by selling to Kmart, and it knew at the time
of the sale of the product to Kmart that Rhode Island would be a
terminal point for the distribution of the product.  See Del
Ponte Dep. at 68.  Although there are additional factors present
in this case, this finding alone has been held sufficient to
permit an exercise of jurisdiction.  See Schwanger v. Munchkin,
Inc., No. 99-1049, 1999 WL 820449, at *6 (Fed. Cir. Oct. 7, 1999)
(unpublished opinion)("[T]he allegations here are that
[defendant] purposefully shipped the accused product into Ohio
through Wal-Mart, an established distribution channel.  The cause
of action for patent infringement is alleged to arise out of
these activities.  No more is required to establish the
purposeful minimum contacts necessary for personal
jurisdiction.") (citing Beverly Hills Fan, 21 F.3d at 1565);
Beverly Hills Fan, 21 F.3d at 1564 (presuming, based on ongoing
relationships, that distribution channel formed between
defendants and retailer was intentionally established and that
defendants knew or reasonably could have foreseen that a
termination point of the channel was Virginia); Fallon Luminous
Prods. Corp. v. Multi Media Elecs., Inc., 343 F.Supp.2d 502, 507
(D.S.C. 2004)("[Defendant] sold the allegedly infringing neon
signs directly to a national retailer, Wal-Mart, which has a
known nationwide distribution chain.  Therefore, [defendant]
intentionally established a nationwide distribution network.");

<u>In re Elonex Phase II Power Mgmt. Litig.</u>, 2003 WL 21026758, at *2
(D. Del. May 6, 2003)(finding that defendant "cannot credibly
claim it had no inkling that some of its monitors would make
their way into Delaware via well-established distribution
channels" where among its biggest customers were two United
States monitor companies with extensive re-seller networks in
Delaware and on the internet); <u>Braley v. Sportec Prods. Co.</u>, No.
Civ. 01-333-JD, 2002 WL 1676293, at *4-5 (D.N.H. July 16, 2002)
(finding that plaintiffs had met their burden of showing that
defendant had sufficient minimum contacts with New Hampshire
under the stream of commerce theory where defendant "put its
product in the stream of commerce with the expectation that it
would be purchased by NASCAR fans, many of whom could be found in
New Hampshire").

    Second, Anisa's vice-president of retail sales, Mr. Del
Ponte, lives and works in Rhode Island.  While Anisa argues that
this is due solely to Mr. Del Ponte's personal preference and not
the result of any company directive, the fact remains that Anisa
has an ongoing, continuous[4] presence in Rhode Island.  Moreover,
Mr. Del Ponte plays a significant role in Anisa's operation as he
is responsible for the company's sales "throughout the United
States."  Telwar Decl. ¶ 12.  He was responsible for securing
Anisa's $800,000.00 relationship with Kmart pursuant to which
Anisa sold Kmart the accused carrying cases, and he performed
significant work in connection with that transaction in Rhode
Island.  <u>See</u> Del Ponte Dep. at 66-67.  Mr. Del Ponte also engages
in extensive email and telephone communication with Anisa's
customers and potential customers and Anisa's home office in

---

[4] Although at times Mr. Del Ponte travels out of state on
business for Anisa, he maintains company documents at his home office
and approximately 100 samples of Anisa products, including samples of
the accused carrying cases.  <u>See</u> Del Ponte Dep. at 13-14.

Atlanta from his home in Rhode Island.

In addition, Mr. Del Ponte has held eight meetings in Rhode Island with customers or potential customers. See Plaintiff's Mem., Exhibit ("Ex.") E (Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories) at 2-3. One of these meetings was attended by Anisa Telwar, Anisa's president. See id. at 2. Mr. Del Ponte displayed Anisa's product samples to customers and potential customers at these Rhode Island meetings. See Del Ponte Dep. at 62. On three additional occasions, Mr. Del Ponte entertained customers or potential customers in Rhode Island. See Plaintiff's Mem., Ex. E at 7-8.

Third, Anisa has had additional contacts with the State of Rhode Island. In 2006, Anisa sold $53,809.62 worth of goods (not involving the accused carrying cases) to the Brooks Pharmacy chain in Rhode Island. See Defendant Anisa Intern[a]tional, Inc.'s Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the Northern District of Georgia ("Defendant's Mem.") at 4. Also in 2006, Anisa hired a Rhode Island company, Middlebridge Marketing, to serve as Anisa's manufacturing representative in Rhode Island. See Del Ponte Dep. at 37-38. Anisa has stored substantial amounts of its goods in Rhode Island. In order to obtain Kmart's cosmetic brush business, Anisa had to purchase about $100,000 of excess inventory from Kmart. See id. at 43. The inventory consisted of approximately 50,000 individual units. See id. at 44. Anisa had these goods shipped into Rhode Island. See id. It then paid a Rhode Island company, Woodbridge Sales and Marketing, to repack and store the goods in Rhode Island. See id. at 45. Anisa stored the goods in Rhode Island for eight to nine months while it looked for a buyer. See id. at 45-46. It then shipped the products from Rhode Island. See id.

Anisa mails checks to Mr. Del Ponte's home in Rhode Island

12

to reimburse him for company-related expenses.  <u>See</u> Plaintiff's
Mem., Ex. E at 7.  In addition, Anisa deposits Mr. Del Ponte's
paycheck into a Rhode Island bank every two weeks.  <u>See</u> Del Ponte
Dep. at 104.  Because Mr. Del Ponte lives and works in Rhode
Island, Anisa pays employment taxes to the State of Rhode Island.
According to documents provided by Anisa, the company has paid
employment taxes to Rhode Island because of Del Ponte's work in
the state.  <u>See</u> Plaintiff's Mem., Ex. G.

In sum, I find that Anisa purposefully directed its
activities at the residents of Rhode Island by: 1) placing its
products in an established distribution channel (through sales to
Kmart) with the knowledge that the product would end up in Rhode
Island; 2) maintaining a continuous presence in Rhode Island
through the presence of its vice-president for retail sales, Mr.
Del Ponte, and manufacturing representative, Middlebridge
Marketing; 3) soliciting sales and making sales in Rhode Island
to at least one Rhode Island company (Brooks Pharmacy); and 4)
transferring substantial inventory (acquired from Kmart) into
Rhode Island and storing that inventory in Rhode Island for eight
to nine months.

## *II.   Relatedness*

The Court now turns to the second factor, i.e. whether
Plaintiff's claim "arises out of or relates to" Anisa's
activities in the forum.  <u>Deprenyl</u>, 297 F.3d at 1351.  This is a
patent infringement case, and the situs of the injury is the
location, or locations, at which the infringing activity directly
impacts on the interests of the patentee.  <u>Beverly Hills Fan</u>, 21
F.3d at 1571; <u>see also</u> <u>Zoltek Corp. v. United States</u>, 442 F.3d
1345, 1363 n.8 (Fed. Cir. 2006)(noting that in cases addressing
personal jurisdiction in patent cases the Federal Circuit has
looked to "the location ... at which the infringing activity
directly impacts on the interests of the patentee")(quoting

Beverly Hills Fan, 21 F.3d at 1571)(alteration in original).  The
accused carrying cases have been offered for sale at Kmart over a
period of several months.  Such sales obviously impact upon
Plaintiff, especially given the fact that JKA is located in Rhode
Island.  Accordingly, I find that Plaintiff's claim arises out of
or relates to Anisa's activities in Rhode Island.

### III.  *Reasonableness*

     This brings the Court to the third factor, whether the
exercise of jurisdiction is "reasonable and fair."  Deprenyl, 297
F.3d at 1351.  Determining whether Anisa has demonstrated that
the exercise of jurisdiction would be so unreasonable as to
violate fair play and substantial justice requires consideration
of several factors.  Deprenyl, 297 F.3d at 1355.  These include:
1) the burden on the defendant; 2) the interests of the forum
state; 3) the plaintiff's interest in obtaining relief; 4) the
interstate judicial system's interest in obtaining the most
efficient resolution of controversies; and 5) the shared interest
of the several states in furthering fundamental substantive
social policies.  Id.

### A.  *Burden on Defendant*

     Anisa is a Georgia corporation with a continuous presence in
Rhode Island in the person of Mr. Del Ponte and its manufacturing
representative, Middlebridge Marketing.  Given that the burden of
appearing has not made the exercise of jurisdiction over foreign
corporations unreasonable, the Court has little difficulty
concluding here that the burden on Anisa of appearing is not
excessive.  Cf. Beverly Hills Fan, 21 F.3d at 1569 (requiring
Chinese manufacturer to appear in Virginia to defend patent
infringement case); id. (noting that progress in communications
and transportation has made the defense of a lawsuit in a foreign
tribunal less burdensome)(citing World Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 294, 100 S.Ct. 559, 565 (1980)); Jacobs

Chuck Mfg. Co. v. Shandong Weida Mach. Co., No. Civ.A. 2:05-CV-
185, 2005 WL 3299718, at *9 (E.D. Tex. Dec. 5, 2005); see also
Homedics, Inc. v. Yejen Indus., Ltd., No. 05-CV-70102-DT, 2006 WL
2594918, at *6 (E.D. Mich. Sept. 8, 2006)(requiring Chinese
company to appear in Michigan court to defend against allegations
of false designation of origin, false advertising, and trade
dress infringement).

### B. Interests of the Forum State

Rhode Island has four significant interests in this dispute.
First, Plaintiff is a Rhode Island corporation, and the state has
an interest in providing a judicial forum for Rhode Island
residents who claim that they have been injured.  Second, because
the accused carrying cases are being offered for sale in Rhode
Island, Plaintiff has suffered injury in this forum.  See
Commissariat, 395 F.3d at 1318 ("[T]he tortious injury caused by
patent infringement occurs within the state where the allegedly
infringing sales are made.").  Rhode Island has an interest in
discouraging injuries that occur within the state, and that
interest extends to intellectual property injuries, including
patent infringement.  See Beverly Hills Fan, 21 F.3d at 1568.
Third, Rhode Island has an interest in discouraging alien and
nonresident manufacturers from using this state as a conduit for
distributing infringing products.  Fourth, Rhode Island has a
substantial interest in cooperating with other states to provide
a forum for litigating federal claims.  See id.

### C. Plaintiff's Interest

As already noted, Plaintiff is a Rhode Island corporation,
and it alleges that it is being injured in this jurisdiction by
sales of brushes packaged in the allegedly infringing carrying
cases.  Plaintiff has selected this forum, and it has a strong
interest in having this matter adjudicated here.

### D. Judicial System's Interest

The judicial system has an interest in obtaining the most efficient resolution of this controversy. Although jurisdiction may also exist in other districts, it appears to the Court that Rhode Island has the strongest connection to the controversy by virtue of the fact that Plaintiff is a Rhode Island corporation and products packaged in the accused carrying cases are being offered for sale in this state.

### E. States' Common Interest

Rhode Island has a substantial interest in cooperating with other states to provide a forum for efficiently litigating Plaintiff's cause of action. See Beverly Hills Fan, 21 F.3d at 1568. Plaintiff will be able to seek redress in Rhode Island for the harm it has allegedly suffered due to Anisa's alleged infringement of Plaintiff's patent. As a result, the other states will be spared the burden of providing a forum for Plaintiff to seek redress for the injuries it claims. See id.

### F. Conclusion Re Reasonableness

After considering the foregoing factors, the Court concludes that Anisa has not demonstrated that this is "one of those 'rare cases[,]'" Deprenyl, 297 F.3d at 1356 (quoting Beverly Hills Fan, 21 F.3d at 1568), where, despite Anisa's minimum contacts with Rhode Island, it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances presented, see Beverly Hills Fan, 21 F.3d at 1568. It is certainly not "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Id.

### Summary

In summary, I find that Anisa has purposely directed its activities at the District of Rhode Island. I further find that

16

Plaintiff's claim arises out of or relates to Anisa's activities in this District and that the exercise of jurisdiction is reasonable and fair.  Accordingly, specific jurisdiction over Anisa exists.[5]  To the extent that the Motion seeks dismissal, it should be denied, and I so recommend.

## Discussion Re Transfer

**Law Re Transfer**

Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  However, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct. 252, 265-66 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947)("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); Paradis v. Dooley, 774 F.Supp. 79, 82 (D.R.I. 1991)(quoting Piper Aircraft and Gulf Oil); Ryan, Klimek, Ryan P'ship v. Royal Ins. Co., 695 F.Supp. 644, 647 (D.R.I. 1988) (quoting Piper Aircraft); Bertozzi v. King Louie Int'l, Inc., 420 F.Supp. 1166, 1173 (D.R.I. 1976)(quoting Gulf Oil).  "Further, if the plaintiff is a resident of the district where the suit is brought, the plaintiff's choice of forum is given even greater deference." LaPlante v. Am. Honda Motor Co., C.A. No. 91-0015T, 1992 U.S. Dist. LEXIS 10180, at *4 (D.R.I. June 26, 1992).

In considering a request to transfer under § 1404(a), a court should consider whether certain public and private interest

---

[5] It is therefore unnecessary for the Court to consider whether general jurisdiction exists.

factors, if applicable, weigh in favor of or against the transfer.  Those factors include:

> (1) ease of access to sources of proof;
> (2) availability of compulsory process to compel attendance of witnesses;
> (3) cost of attendance of willing witnesses;
> (4) ease of a view of premises, if necessary;
> (5) enforceability of the judgment, if obtained;
> (6) advantages and obstacles to a fair trial;
> (7) status of the court's trial calendar;
> (8) familiarity of forum with applicable state law.

Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., C.A. No. 92-0075 P, 1993 U.S. Dist. LEXIS 20855, at *18-19 (D.R.I. July 8, 1993)(citing Gulf Oil); see also McGlynn v. Credit Store, Inc., 234 B.R. 576, 582 (D.R.I. 1999)(citing Gulf Oil); Paradis v. Dooley, 774 F.Supp. at 82 (quoting Piper). The burden is on the defendant to make the showing that the balance of these factors strongly favors transfer.  See Bertozzi v. King Louie Int'l, Inc., 420 F.Supp. at 1173.

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice.  He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems.

Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 720 (1st Cir. 1996) (quoting Koster v. Lumbermens Mut. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831 (1947)).

**Application**

Having considered the relevant factors, ths Court concludes that they do not strongly favor transfer.  It will be no more

18

inconvenient for Defendant's witnesses to travel to Rhode Island than for Plaintiff's witnesses to travel to Georgia. Furthermore, in this intellectual property dispute, both parties likely possess relevant documentary evidence.  Anisa has not made a particular showing that its documents are "particularly bulky or difficult to transport," Citibank, N.A. v. Affinity Processing Corp., 248 F.Supp.2d 172, 177 (E.D.N.Y. 2003)(quoting Constitution Reins. Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247, 1251 (S.D.N.Y. 1995)), nor has it submitted "proof that it is somehow a greater imposition for [Defendant] to bring [its] evidence to [Rhode Island] than for [Plaintiff] to bring its evidence to [Georgia]," id.  Consequently, the Court concludes that the location of evidence factor does not weigh heavily in favor of transfer.  Cf. Zahn v. Yucaipa Capital Fund, 218 B.R. 656, 678 (D.R.I. 1998)("[T]ransfer is inappropriate if it merely shifts inconvenience from one party to another.  Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.")(citation and internal quotation marks omitted); Ballard Med. Prods. v. Concord Labs., Inc., 700 F.Supp. 796, 801 (D. Del. 1988)("If the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed.").

There is no suggestion that the availability of compulsory process to compel attendance of witnesses is an issue in this case.  The only view necessary is that of the alleged infringing carrying cases themselves, and this can be accomplished easily in either district.  A judgment will be enforceable in either district, and there are no apparent obstacles to a fair trial in either location.  The status of the courts' calendars does not appear to be an issue.  The law to be applied is federal patent law, so this factor neither favors nor disfavors transfer.

Finally, Rhode Island has a strong interest in this litigation as Plaintiff is a Rhode Island corporation and acts of infringement have occurred in Rhode Island. <u>Cf.</u> <u>Cruz v. Hartford Cas. Ins. Co.</u>, No. C.A. 005-38S, 2005 WL 1231965, at *2 (D.R.I. May 20, 2005)(identifying "the state or public interest at stake" as among the factors traditionally weighed in deciding whether the balance of convenience analysis overcomes the "first-filed rule").

In sum, I find that Anisa has not shown that balance of convenience and related factors overcome the presumption favoring Plaintiff's choice of forum.  Accordingly, Anisa's alternative motion to transfer should be denied, and I so recommend.

## Conclusion

For the reasons stated above, I find that the Motion to Dismiss or Transfer should be denied, and I so recommend.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 30, 2008